Amy S. v George R. S. (2006 NY Slip Op 52471(U))

[*1]

Amy S. v George R. S.

2006 NY Slip Op 52471(U) [14 Misc 3d 1210(A)]

Decided on December 27, 2006

Family Court, Suffolk County

Lynaugh, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 27, 2006

Family Court, Suffolk County
Amy S., Petitioner,
against
George R. S., Respondent.
V-10349-06/06A

COUNSEL FOR PETITIONER
Jennifer A. Mendelsohn, Esq.
500 Portion Road
Suite 12
Ronkonkoma, New York 11779
COUNSEL FOR RESPONDENT
Terry J. Karl, Esq.
400 Townline Road
Hauppauge, New York 11788
LAW GUARDIAN
Domenik Veraldi, Esq.
One Suffolk Square
1601 Veterans Highway, Suite 530
Islandia, New York 11749

Barbara Lynaugh, J.
By petition dated 6/15/06, petitioner-mother seeks to modify the terms of a judgment of the Supreme Court, Suffolk County (Rebolini, J.), dated 4/16/04, which, upon an incorporated stipulation, awarded the parties joint custody of their two children Emily, born 10/18/91, and Sarah, born 9/22/94, with residential custody to respondent-father and visitation to mother. Mother now [*2]seeks to modify the judgment so as to award her custody of Emily and permission to relocate to the state of Ohio with Emily. Father opposes.
Having heard the evidence offered at the hearing, having conducted an
in camera interview with each child, and having reviewed the position of the Law Guardian, and with thorough and careful consideration, the court makes
the following findings and conclusions.
Mother had resided in an apartment one block from father's home in Sound Beach until June 2006 when she decided to move back to Wadsworth, Ohio, where she was born, where she grew up, and where her extended family still resides. Mother's aunt had purchased a three-bedroom home and made it available to mother on a "rent-to-own" basis. Mother found this to be a financially feasible way for her to own her own home.
Mother has obtained employment in the local library system in Wadsworth where she earns $9.00 per hour plus health benefits working part time. Mother has also obtained her cosmetology license in Ohio and plans to seek part time employment in this field, which had been her profession in New York. Since the trial in this matter has been pending, mother has been staying in Miller Place, New York, with a friend and working in the school which Sarah attends.
Prior to the summer of 2006, mother had been visiting with both girls on Wednesdays and alternate weekends. The girls have had extended visits in Ohio with mother's family twice per year for the past four years. Emily has several cousins in Ohio in her age group with whom she is close. Since mother announced her plan to relocate to Ohio, Sarah has refused to visit with mother. Mother only sees Sarah during the school day, and Sarah wants little to do with mother during these occasions. Mother has been maintaining regular visitation with Emily.
Should mother be permitted to relocate to Ohio with Emily, she proposes to allow father to have visitation with Emily during long holiday weekends, half the summer, and half of each school recess. Mother proposes to meet father half way between New York and Ohio and would arrange for each parent to visit with the child with whom they are not residing and for the girls to visit with each other.
Emily is a special education student who participates in the Wilson reading program and receives speech therapy. She does well in school and is in the Junior Honor Society. Mother has investigated two Christian schools near Wadsworth. Each school has the Wilson reading program and speech therapy available; Emily [*3]has cousins which attend each of these schools.
Mother's proposed relocation to Ohio with Emily has caused a tremendous amount of conflict within father's home. The relationship between Emily and Sarah had not been a congenial one and Emily's relationship with her father had been strained, at best. With the Ohio issue added to the mix and with Emily having expressed a desire to move with her mother, the situation in father's home has imploded.
There has been much arguing within father's home over the move with much pressure being brought to bear on Emily by her father and sister to get her to change her mind. Sarah, who is a very confrontational and outspoken child, has expressed much anger and distrust towards both her mother and her sister, and now has virtually no relationship with either.
In stark contrast to her sister Sarah, Emily is a sensitive, quiet, and emotional child who is becoming increasingly withdrawn. The atmosphere in father's home has caused this child a great deal of emotional turmoil, as was plainly evident during the in camera interview. This is a 15-year-old child who is seriously stressed; she was teary, shaking, and even found it difficult to speak.
At the conclusion of the in camera, the Law Guardian placed his position on the record. His comments were thoughtful and insightful. The Law Guardian feels that continued custody with father is causing Emily to become emotionally and physically upset. He maintains that the family environment in father's home is contraindicated for a person of Emily's sensitivities. Emily craves more time with her mother, is intimidated and fearful of her father, and is unable to talk to her sister. The Law Guardian feels that the calmer atmosphere in Ohio with her mother and her other relatives will be a substantial benefit for Emily. He notes that the child's desire to relocate is genuine and best for her. The court concurs.
When deciding whether to allow a proposed relocation, the court must consider and give appropriate weight to all of the relevant factors of an individual dispute. These factors include but are not limited to "each parent's reasons for seeking or opposing the move, the quality of the relationships between the child and the custodial and noncustodial parents, the impact of the move on the quantity and quality of the child's future contact with the noncustodial parent, the degree to which the custodial parent's and child's life may be enhanced economically, emotionally and educationally by the move, and the feasibility of preserving the relationship between the noncustodial parent and the child through suitable visitation arrangements." For a relocation to be allowed, it must [*4]be established "by a preponderance of the evidence that a proposed relocation would serve the child's best interests." Tropea v. Tropea, 87 NY2d 727,
642 NYS2d 575 (1996).
"In determining whether a custody agreement should be modified, the paramount issue before the court is whether, under the totality of the circumstances, a modification of custody is in the best interest of the children." Johnson v. Johnson, 309 AD2d 750, 765 NYS2d 271 (2nd Dept., 2003).
"Moreover, where parents enter into an agreement concerning custody it will not be set aside unless there is a sufficient change of circumstances since the time of the stipulation and unless the modification of the custody agreement is in the best interests of the children.'" Smoczkiewicz v. Smoczkiewicz, 2 AD3d 705, 770 NYS2d 101 (2nd Dept., 2003), citing Gaudette v. Gaudette, 262 AD2d 804, 691 NYS2d 681 (3rd Dept., 1999).
In the case at bar, father has had residential custody of Emily for less than three years. During that time, he may have provided a stable home for Emily, but he has now lost the ability to provide for this child emotionally. Emily is suffering tremendously as a result.
Mother is Emily's psychological parent and the two share a close, nurturing, and loving relationship. Emily is 15-years-old and has a strong desire to live with her mother and to be away from the high level of conflict in her father's home which is causing her a great deal of stress and emotional turmoil.
While the court would not normally separate siblings, Emily's relationship with her sister Sarah is not a healthy one. Sarah expresses open animosity and distrust towards Emily. While it doesn't really matter to Sarah if Emily remains in New York or moves to Ohio, Sarah has vowed to write Emily out of her life if she does move to Ohio. This is not the type of nurturing sibling bond which needs to be maintained.
Emily's hurtful relationship with her sister and her strained and stressful relationship with her father are damaging this child. Should she remain in her father's custody, she will not survive emotionally. She needs to be in a place free of conflict, a place which is calmer, nurturing, and supportive. Emily is not getting what she needs from her father. Emily needs to be with her mother.
Mother has established an adequate basis for the modification of the existing order. The complete breakdown in the relationship between father and Emily, father's seeming inability and/or unwillingness to either recognize [*5]or rectify this situation, and the tremendous amount of emotional pain being suffered by Emily in her father's custody as a result of these factors comprise a sufficient change of circumstances to warrant modification and a finding that a modification of the order would now be in Emily's best interests.
Mother has further established a sound and substantial basis for her relocation to Ohio. This is her childhood home, her extended family lives nearby, and she can now afford her own home there with the assistance of her aunt.
Emily has visited Ohio regularly throughout the years and has formed close relationships with her cousins and other relatives. Mother's proposed visitation schedule is reasonable. However, it will work only if father and Sarah cooperate.
In view of the foregoing, the court concludes that it would be in Emily's best interests for mother to be awarded custody and for mother to be granted permission to relocate with Emily to Ohio. The judgment of divorce will be so modified.
The parties shall arrange visitation at least monthly during long weekends, half of each school recess, and half of the summer, meeting at a designated midway point. The parties shall further arrange visitation so that Sarah and Emily may spend substantial periods of time together. Father will have to ensure that Sarah (who is only 12-years-old) cooperates in the visitation arrangements. He should use his best efforts to encourage Sarah to mend her relationships with both her sister and her mother.
A separate order shall enter.
Dated: December 27, 2006

BARBARALYNAUGH
JUDGE OF THE FAMILY COURT
[*6]